[No. 41133-4-II.   Division Two.   February 26, 2013.]

THE STATE OF WASHINGTON, *Respondent*, v. JAMES PHILIP DOUGLAS, *Appellant*.

*David B. Koch* (of *Nielsen, Broman & Koch PLLC*), for appellant.

850

*Mark E. Lindquist, Prosecuting Attorney*, and *Kimberley A. DeMarco, Deputy*, for respondent.

¶1 QUINN-BRINTNALL, J. — After this court remanded for a new trial, a jury found James Philip Douglas guilty of first degree arson, residential burglary, and felony violation of a protection order. The jury also found the existence of aggravating factors. Douglas, who proceeded pro se, was sentenced to 480 months—419 months more than his original 61-month sentence. Douglas appeals, alleging that under RCW 9.94A.537(2), the State did not have the statutory authority to seek an exceptional sentence.[1] We hold that RCW 9.94A.537(2) does not apply to sentencing hearings on remand following a new trial and that the State had statutory authority to seek an exceptional sentence, and we affirm.

FACTS

SUBSTANTIVE FACTS

¶2 Debra and James Douglas married in September 2002. In September 2003, their daughter A.[2] was born. Approximately three weeks later, Debra[3] took A. and moved in with her parents, Carroll and Pauline Pederson. Shortly after Debra moved in with the Pedersons, her parents took

---

[1] Douglas raises 4 additional issues in his opening brief and 16 additional issues in his statement of additional grounds (SAG). RAP 10.10. Because they have no precedential value, we address the remainder of his issues in the unpublished portion of our opinion.

[2] We refer to Douglas and Debra's minor child by an initial to protect her privacy.

[3] For clarity, we refer to Debra Douglas, Carroll Pederson, and Pauline Pederson by their first names. We intend no disrespect.

over the custody exchanges with Douglas. The custody exchanges became increasingly contentious. On July 25, 2004, Douglas assaulted Carroll and Pauline during a custody exchange in the parking lot of the Bonney Lake Police Department. The State charged Douglas with second degree assault and fourth degree assault. A domestic violence no-contact order protecting Carroll and Pauline was entered against Douglas.

¶3 On October 10, 2004, while the family was at church, the fire department responded to a fire and explosion at the Pedersons' home. The front window of the house had been blown out onto the front lawn. The explosion had also blown out one of the bedroom walls. The fire investigator determined that the interior of the house had been soaked with gasoline and that the fire was started by a delayed ignition device in the laundry room. The fire investigator also found gas cans and gas can spouts throughout the house and in the garage.

¶4 On November 1, 2004, the State charged Douglas with one count of first degree arson. RCW 9A.48.020(1)(a). On May 11, 2005, the State filed an amended information charging Douglas with one count of first degree arson, one count of residential burglary, and one count of felony violation of a protection order (arson-related charges). RCW 9A.48-.020(1)(a); former RCW 9A.52.025 (1989); RCW 26.50.110. The State alleged the following aggravating factors on the first degree arson and residential burglary:

> (i) the offense was part of an ongoing pattern of psychological, physical, or sexual abuse of the victim manifested by multiple incidents over a prolonged period of time; (ii) the offense occurred within sight or sound of the victim's or the offender's minor children under the age of eighteen years; or (iii) the offender's conduct during the commission of the current offense manifested deliberate cruelty or intimidation of the victim AND/OR the offense involved an invasion of the victim's privacy AND/OR the offense was committed shortly after the defendant was released from incarceration.

Clerk's Papers (CP) at 844, 845. The State also alleged that the classification of the domestic violence court order violation was increased because

> the conduct which constituted said violation of the court order was reckless and did create a substantial risk of death or serious injury to another person.

CP at 845.

¶5 The trial court joined the assault-related and arson-related charges for trial. The jury found Douglas guilty on all counts as charged. *State v. Douglas*, noted at 146 Wn. App. 1046, 2008 WL 4062794, at *4-5, 2008 Wash. App. LEXIS 2195, at *11-13. In an unpublished opinion issued on September 3, 2008, we reversed Douglas's arson-related convictions based on ineffective assistance of counsel, affirmed his assault-related convictions, and remanded. *Douglas*, noted at 146 Wn. App. 1046.[4]

PROCEDURAL FACTS

¶6 On November 21, 2008, the State set a new trial date for the arson-related charges. On December 1, 2008, Douglas moved to proceed pro se. After a lengthy colloquy, the trial court granted Douglas's motion to proceed pro se with standby counsel.

¶7 Jury selection in Douglas's second trial began on July 13, 2009. On July 14, Douglas was attacked in the jail. Douglas appeared in court with a black eye and told the trial court that he had hit his head and probably had a concussion. Observing that Douglas appeared to be dazed, the trial court recessed the trial until July 17 to give Douglas time to decide if he would be able to continue picking a jury the following Monday. On July 17, Douglas

---

[4] After remand, the assault-related charges were severed from the arson-related charges. *State v. Douglas*, noted at 160 Wn. App. 1016, 2011 WL 704879, at *1, 2011 Wash. App. LEXIS 488, at *3 (*Douglas* II). On March 27, 2009, Douglas was resentenced on the assault-related charges. *Douglas* II, 2011 WL 704879, at *1, 2011 Wash. App. LEXIS 488, at *4. On March 1, 2011, we affirmed Douglas's sentence. *Douglas* II, 2011 WL 704879, at *5, 2011 Wash. App. LEXIS 488, at *15.

told the trial court that he was not prepared to go forward with his trial. Trial recessed until Monday, but the trial judge stated, "If this case can't get started on Tuesday, I think we've run out of time." Report of Proceedings (RP) (July 17, 2009) at 253.

¶8 On July 20, Douglas told the court that he was still not ready to go to trial. Because of scheduling issues, the case would have been recessed for approximately four weeks. Over Douglas's objection, the trial court declared a mistrial. The case was then assigned to a different department to set a new trial date.

¶9 On August 4, 2009, Douglas's next court appearance, standby counsel moved to withdraw. The trial court continued the motion until Douglas's next court appearance. Citing his recent head injury, the State also moved to have Douglas undergo a competency evaluation at Western State Hospital (WSH). The trial court granted the State's motion, over Douglas's objection. On August 24, 2009, the trial court found Douglas competent. The trial court also granted standby counsel's motion to withdraw.

¶10 On September 29, 2009, Douglas requested that an attorney be appointed from Department of Assigned Counsel's (DAC) conflict pool. The trial court ordered an attorney be appointed from that pool. On October 8, 2009, Douglas's trial was continued to allow the new attorney an opportunity to prepare. On December 29, 2009, the trial court allowed another substitution of counsel because Douglas's current counsel started a new job. The trial was continued again to allow Douglas's new counsel time to prepare.

¶11 On May 4, 2010, Douglas's appointed counsel requested that Douglas undergo another competency evaluation at WSH. The trial court granted defense counsel's request. The trial court found Douglas competent again on May 19, 2010. On May 26, 2010, Douglas again requested to proceed pro se. Although the judge expressed concerns about Douglas's ability to represent himself, she conducted

a colloquy and granted Douglas's request to be allowed to proceed pro se.

¶12 On June 30, 2010, the trial commenced. Because the State alleged that Douglas's offenses were part of an ongoing pattern of abuse, the trial court bifurcated the trial under RCW 9.94A.537(4) to avoid unduly prejudicing the jury.[5] On August 17, 2010, the jury found Douglas guilty of first degree arson, residential burglary, and felony violation of a protection order. After the jury returned the verdicts, Douglas requested that the trial court appoint counsel for the aggravating factor phase of trial. The State objected, arguing that reappointing counsel would likely require a continuance and that the jury had already been on the case for two months. The State also expressed concern that Douglas would not work with counsel, resulting in another motion to proceed pro se. After an extensive colloquy with Douglas, the trial court determined that Douglas was not willing to give control of the case to an attorney and refused to reappoint counsel. At that point, Douglas refused to further participate in the case and voluntarily absented himself from the aggravating factor phase of his trial.

¶13 On August 19, 2010, the jury found that the arson and residential burglary were part of an ongoing pattern of abuse against Carroll, Pauline, and Debra. The jury also found that the arson was committed with deliberate cruelty.

¶14 At sentencing, the State calculated Douglas's offender score at 5 for the arson, 4 for the residential burglary, and 4 for the felony violation of the protection order. Douglas's standard sentencing range was 46 to 61 months on the arson, 15 to 20 months on the residential burglary, and 22 to 29 months on the violation of the domestic violence protection order. At sentencing, Douglas

---

[5] At both the trial court and in their briefing before us, the parties refer to the separate proceedings as the "guilt phase" and the "sentencing phase" of trial. Unlike in the sentencing or penalty phase of a death penalty case, the term "sentencing phase" is not accurate because the jury is not deciding or imposing a sentence. Therefore, we refer to the second phase of Douglas's trial as the aggravating factor phase.

challenged the deliberate cruelty finding. The trial court determined that the State properly calculated Douglas's offender score and sentenced Douglas to an exceptional sentence totaling 480 months. The trial court specifically stated that it was not considering the deliberate cruelty finding and that it would have imposed the same sentence even if the jury had not found deliberate cruelty. Douglas timely appeals his conviction and his exceptional sentence.

## ANALYSIS

EXCEPTIONAL SENTENCE

■ ¶15 Douglas argues that the State did not have statutory authority to seek an exceptional sentence because Douglas was not given an exceptional sentence at his first trial. To support his position, Douglas cites RCW 9.94A-.537(2), which states,

> In any case where an exceptional sentence above the standard range was imposed and where a new sentencing hearing is required, the superior court may impanel a jury to consider any alleged aggravating circumstances listed in RCW 9.94A.535(3), that were relied upon by the superior court in imposing the previous sentence, at the new sentencing hearing.

Douglas reasons that because his retrial ultimately resulted in a resentencing, the State could empanel a jury to find aggravating factors only if the aggravating factors had previously been used to impose an exceptional sentence at his first sentencing hearing. The State contends that RCW 9.94A.537(2) applies only to resentencing hearings required because of a *Blakely*[6] error but not sentencing following a new trial. We agree with the State's reading of RCW 9.94A.537(2).

¶16 Douglas argues that the plain language of RCW 9.94A.537(2) deprives the State of the statutory authority to seek an exceptional sentence in this case. But Douglas is

---

[6] *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).

mistaken; the plain language of RCW 9.94A.537(2) demonstrates that it does not apply to Douglas's case. The first clause of RCW 9.94A.537(2) establishes the circumstances, both of which must be present, for the statute to apply. First, an exceptional sentence must have been imposed; second, a new sentencing hearing must be required. RCW 9.94A.537(2). Here, an exceptional sentence was not imposed after Douglas's first trial.

¶17 Moreover, Douglas cites no authority supporting his interpretation of RCW 9.94A.537(2) or his proposition that a sentencing hearing following a new trial is a resentencing hearing. He also fails to cite any additional authority supporting his position that the State is barred from seeking an exceptional sentence on retrial when the aggravating factors were alleged in the original information. Accordingly, we hold that RCW 9.94A.537(2) does not bar the State from seeking an exceptional sentence in a case that has been remanded for a new trial, even if an exceptional sentence was requested but not imposed following a previous trial.

¶18 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

JOHANSON, A.C.J., and PENOYAR, J., concur.

Review denied at 178 Wn.2d 1004 (2013).